**In re DENDY et al.**

**No. 5581.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 25, 1943.

Rehearing Denied Nov. 22, 1943.

298

James O. Cade, of Lubbock, for appellants.

Gerald C. Mann, Atty. Gen., and Ocie Speer, Asst. Atty. Gen., for the State, appellee.

Syrian E. Marbut, Co. Atty., of Lubbock, for Lubbock County, appellee.

PITTS, Chief Justice.

This is an appeal from a hearing had on two petitions filed by J. W. Wilson, probation officer, on August 5, 1943, in the Juvenile Court of Lubbock County, Texas, with Honorable G. V. Pardue, County Judge, presiding, alleging that Billy Dendy and L. J. King, Jr., both of Amarillo, Texas, are delinquent male children over ten years of age and under seventeen years of age and charging that they did on or about the 3rd day of August, 1943, then and there unlawfully, wilfully and fraudulently take one Ford De Luxe automobile of the value of $1,000 from C. B. Conditt, the said property being his corporeal personal property, and praying for notice to be served on the parents of said children and for a hearing on a designated date on said petitions.

The record discloses that notices were served on the parents of said children; that on August 18, 1943, motions on behalf of said children to dismiss the petitions filed were overruled by the trial court with exceptions reserved on the part of said children; that the trial court, over the objection of counsel for said children, consolidated the two cases for trial in one hearing; that said children asked to be tried before a jury but a trial by jury was denied them by the trial court who stated that no jury had been demanded as required in other civil cases; that by order of the trial court the case proceeded to trial before the court without a jury with said children, their respective fathers and counsel of their choice appearing; that the following stipulation was agreed upon: "It is hereby stipulated and agreed by and between counsel for the petitioner and counsel for the juveniles, to-wit: Billy Dendy and L. J. King, Jr., that the juveniles were taken into custody by the Sheriff of Dawson County, Texas in possession of the car in question in Dawson County."

The record further discloses that Billy Dendy was called by the county attorney, sworn and compelled, over his objection through his counsel, to testify as follows:

"On Examination by Mr. Marbut: My name is Billy Dendy. I am fifteen years of age, being born on the 17th day of September, 1927. I live at Amarillo, Texas. I was with L. J. King, Jr. and helped him to take the car belonging to Mr. C. B. Conditt and C. J. Reynolds on August 3, 1943 from their car lot in Lubbock, Lubbock County, Texas. I did not drive the car. L. J. King, Jr. drove the car. We were taken into custody in possession of this car near Lamesa in Dawson County, Texas by the Sheriff of Dawson County, Texas on the 4th day of August, 1943.

"On Examination by the Court: I have served a previous term in the boys' reformatory at Gatesville, Texas, having been previously convicted of burglary by the Juvenile Court of Potter County, Texas."

The record shows that L. J. King, Jr., was called by the county attorney, sworn and compelled, over his objections through his counsel, to testify as follows:

"On Direct Examination by Mr. Marbut: My name is L. J. King, Jr. I am fifteen years of age, being born on June 14, 1928. I live at Amarillo, Texas. I was with Billy Dendy and helped take the car belonging to Mr. C. B. Conditt and Mr. C. J. Reynolds on August 3, 1943 from the car lot in Lubbock, Lubbock County, Texas. I drove the car. We were taken into custody in possession of this car near Lamesa in Dawson County, Texas on our way back by the Sheriff of Dawson County, Texas on the 4th day of August, 1943."

The owners of the automobile testified that they knew the boys and one of them had worked for them and that they did not give the boys permission to take the automobile. At the close of the evidence the trial court by judgment entered found said children to be delinquent children as alleged and ordered them committed to the State School for Boys at Gatesville, Coryell County, Texas, for an indeterminate period of time not exceeding the time beyond their attaining twenty-one years of age, subject to further orders of the court, from which judgment and sentence said children through their fathers and counsel perfected their appeal to this court. Hereafter said children, joined by their fathers, respectively, W. H. Dendy and L. J. King, Sr., will be referred to as appellants and J. W. Wilson, the petitioner, as appellee.

This proceeding was had as provided under Senate Bill No. 44, Chapter 204 of the General Laws of 1943, Regular Session of the 48th Legislature, the same being article 2338—1, Vernon's Annotated Civil Statutes.

Appellants attack generally and specifically the constitutionality of the law. The principal complaints made by appellants are as follows: That the trial court erred in refusing the minor children a trial by a jury; that the trial court erred in compelling the said children to testify, over their objections, against themselves; that the trial court erred in refusing to allow said children a public trial and that the trial court erred in consolidating the two cases as civil cases for trial when in fact they were criminal cases. Appellants filed bills of exceptions approved by the trial court in support of their claims of said errors.

Senate Bill No. 44, Chapter 204 of the General Laws 1943 Regular Session of the 48th Legislature, is a lengthy Act and we shall quote only such parts of it as seem essential here. The initial sentence of the title to said Act is as follows: "An Act the purpose of which is to change the method for handling delinquent children from the present criminal procedure to guardianship in order to secure for each child coming within the Act such care, guidance and control as will serve the child's welfare and the best interest of the state; * * *."

The Act further provides as follows:

"Section 1. Purpose and Basic Principle. The purpose of this Act is to secure for each child under its jurisdiction such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interest of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given him by his parents.

"The principle is hereby recognized that children under the jurisdiction of the court are wards of the state, subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them.

"Sec. 2. Construction of the Act. This Act shall be liberally construed to accomplish the purpose herein sought.

"Sec. 3. Definitions. The word 'court' means the 'Juvenile Court'. The word 'Judge' means the Judge of the Juvenile Court. The term 'delinquent child' means any female person over the age of ten (10) years and under the age of eighteen (18) years and any male person over the age of ten (10) years and under the age of seventeen (17) years:

"(a) who violates any penal law of this state of the grade of felony;

"(b) or who violates any penal law of this state of the grade of misdemeanor where the punishment prescribed for such offense may be by confinement in jail;

"(c) or who habitually violates any penal law of this state of the grade of misdemeanor where the punishment prescribed for such offense is by pecuniary fine only;

"(d) or who habitually violates any penal ordinance of a political subdivision of this state;

"(e) or who habitually violates a compulsory school attendance law of this state;

"(f) or who habitually so deports himself as to injure or endanger the morals or health of himself or others;

"(g) or who habitually associates with vicious and immoral persons.

\*    \*    \*    \*    \*

"Sec. 5. Jurisdiction. The Juvenile Court shall have exclusive original jurisdiction in proceedings governing any delinquent child, and such court shall be deemed in session at all times.

\*    \*    \*    \*    \*

"Sec. 8. * * *

"If it appears that the child is in such condition or surroundings that his welfare requires that his custody be immediately assumed by the court, the Judge may cause to be endorsed upon the summons an order that the officer serving the same shall at once take the child into custody.

\*    \*    \*    \*    \*

"Sec. 11. Release of Child Taken into Custody. Whenever any officer takes a child into custody, he may release said child to a parent, guardian, or any other person upon receipt of a written or oral promise of said person to assume complete responsibility for said child and to have him before the probation officer or the court at any time then, or subsequently, specified by said officer. If not so released, such child shall be placed in the custody of a probation officer or other person designated by the court or be taken immediately to the probation department, the court, or to the place of detention designated by the court. * * *

"Any peace officer or probation officer shall have the right to take into custody any child who is found violating any law

or ordinance, or who is reasonably believed to be a fugitive from his parents or from justice, or whose surroundings are such as to endanger his health, welfare, or morals. The child shall forthwith be brought to the Judge, who shall order the child's release, or his temporary detention either in the compartment provided for the custody of juveniles, or by a suitable person or agency as in the judgment of the court may seem proper. If the child is ordered detained, the petition provided for herein shall be filed immediately. In every such case the said officer shall refer all such cases, together with information they have secured concerning the child, to the court or the probation department, and the case shall then be proceeded with as specified in this Act, * * *.

*      *.      *      *      *

"Sec. 13. Hearing, Judgment. The Judge may conduct the hearing in an informal manner and may adjourn the hearing from time to time. In the hearing of any case the general public may be excluded. * * *

"If no jury is demanded, the Judge shall proceed with the hearing. When the proceeding is with a jury, the verdict shall state whether the juvenile is a 'delinquent child' within the meaning of this Act, and if the Judge or jury finds that the child is delinquent, or otherwise within the provisions of this Act, the court may by order duly entered proceed as follows:

"(1) place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court shall determine;

"(2) commit the child to a suitable public institution or agency, or to a suitable private institution or agency authorized to care for children; or to place them in suitable family homes or parental homes for an indeterminate period of time, not extending beyond the time the child shall reach the age of twenty-one (21) years;

"(3) make such further disposition as the court may deem to be for the best interest of the child, except as herein otherwise provided.

*      *      *      *      *

"Sec. 13-A. * * * Any person interested in any such case may appear therein and may be represented by counsel, and may demand a jury as in other cases. If no jury is demanded, it shall be deemed

waived. The Judge of the court, of his own motion, may order the jury to try such a case.

*      *      *      *      *

"Sec. 15. Records. Juvenile Court records shall not be inspected by persons other than probation officers or other officers of the Juvenile Court unless otherwise directed by the court.

*      *      *      *      *

"Sec. 23. Constitutionality. If any section, subdivision, or clause of this Act shall be held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of the Act.

"Sec. 24. Laws Repealed. Articles 1083, 1084, 1085, 1086, 1088, 1089, 1090, 1091, 1092, 1093 of the Code of Criminal Procedure, and Article 1087 of the Code of Criminal Procedure as amended Acts 1927, 40th Legislature, Chapter 163, Section 1, are hereby repealed.

"Articles 2329 and 2338 of the Revised Civil Statutes of Texas, 1925, are hereby repealed.

*      *      *      *      *

"Sec. 25. Time of Taking Effect. The fact that the present Statutes governing the handling of child delinquents are criminal in nature, instead of a procedure in the nature of guardianship, and the fact that all but very few states have found the guardianship method of handling juvenile delinquents more practicable, and the further fact verified by statistics that juvenile delinquency in Texas has greatly increased in recent years, thus indicating the even greater need for a more realistic method of handling such cases, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in full force and effect 60 days after its passage, and it is so enacted.

*      *      *      *      *

"Effective 60 days after May 1, 1943."

The Act provides for appeals to the Court of Civil Appeals and the right to carry a case to the Supreme Court by writ of error. Section 21 of said Act provides in part as follows: "An appeal, in the case of a child, shall not suspend the order of the Juvenile Court, nor shall it discharge the child from the custody of that court or of the person, institution or agency to whose care such child shall have

been committed, unless that court shall so order. However, the appellate court may provide for a recognizance bond."

■■ The Act sets up a complete jurisdiction and procedure for the hearing of juvenile delinquent cases and there is no other law, civil or criminal, to govern such cases and situations as defined by the Act and placed within the exclusive jurisdiction of the juvenile court provided for in this Act. Nowhere does the Act provide that either criminal or civil procedure shall be followed. While Section 2 of the Act provides that the "Act shall be liberally construed," it does not give the trial court unlimited authority and power in procedure in such cases.

■ Heretofore the trial court has had broad discretionary powers in guardianship hearings, dependent and neglected child hearings, child custody hearings in divorce proceedings, adoption hearings, and his final judgment in such cases is rarely ever disturbed by appellate courts unless it appears that the trial judge has abused his judicial discretion. However, there are certain fundamental basic principles of law that men have recognized and observed since time immemorial and our American jurisprudence has followed many such principles and rules of law. One of these rules is that the accused is entitled to have a trial by an impartial jury, if he demands such, and another is that the accused cannot be compelled to give evidence against himself. Numerous authorities hold that a witness cannot be compelled to give evidence that will tend either directly or indirectly to incriminate himself, whether the case be civil or criminal. Fleishman v. State et al., Tex. Civ.App., 91 S.W.2d 493, and authorities therein cited; 44 Tex.Jur. 964, par. 21, and authorities thereunder cited. Both the New Century Dictionary and Webster's New International Dictionary define the word "incriminate" as follows: "To charge with a crime or fraud; to accuse, or to involve in an accusation." According to these authorities, it would be error to compel an accused juvenile to give evidence against himself whether the procedure be criminal or civil.

■ Numerous authorities hold that it is proper for the trial court to inform a witness in language understood by him that he is not required to answer a question if it will incriminate him. 44 Tex.Jur. 973, par. 29.

■ The Act in question provides for a jury trial when a jury is demanded and authorizes the trial court to order a jury on his own motion in such cases. Nowhere does the Act provide for the payment of a jury fee and nowhere does it require the trial court to follow civil procedure in demanding and impanelling a jury if and when a jury is demanded in such cases. Therefore, we believe the trial court committed error in denying Billy Dendy and L. J. King, Jr., a trial by an impartial jury.

■ The Act does not require an accused child in such a procedure to testify against himself in such a case and nowhere does the Act require the trial court to follow civil procedure in taking testimony in such cases. We, therefore, believe the trial court committed error in requiring Billy Dendy and L. J. King, Jr. to give evidence, over their objections, against themselves.

■ The Act does not require the trial court to conduct the proceedings in such cases behind closed doors and in chambers. It does authorize the trial court to exclude the general public from the hearing of any case if he thinks proper. This is done for the protection of the child and to keep him from being subjected to publicity and possible public ridicule that may have a tendency to destroy his morale and make him worse rather than better. It seems that it will be for the best interests of the child and for the general public that such cases be not publicized. Most parents would not complain at the trial court for excluding the general public from attending such a hearing but would prefer that such be done. We think such a provision is wisely given for the protection of the child if and when the trial court thinks it is proper to exercise such discretion. It is our opinion that this Act was passed making the juvenile court an agency to safeguard the child who, because of the neglect or lack of interest of others, has become a "problem child" and a potential criminal. This Act affords the juvenile court an opportunity to counsel with such a child, give him the proper guidance for good citizenship, counteract any demoralizing influences that may have been leading him astray, and to substitute the court as far as he can for parental supervision in wisely directing the energies of the child. Such can be done best by ascertaining a history of the case, winning the confidence of the child and proving an in-

terest manifestly in his well being. Parents do not attempt such discipline of their children before the general public and it stands to reason that there are times when a juvenile court would consider it for the best interest of the child and society to exclude the general public when he resorts to such methods of discipline. It is our opinion that such a provision in said Act does not contravene either the State or Federal Constitution. We do not believe the trial court committed error in excluding the general public from the hearing in this case since the record fails to show that any harm was done as a result of such.

■ The Act makes no provision for consolidating for trial by the trial court of two or more such cases; neither does it prohibit such. Since the trial court is given much discretion in procedure in all cases involving the rights and future destinies of minor children and since the instant cases were parallel cases that grew out of the same transaction and since the record does not disclose any injustice or harm done to either child, we believe the trial court did not abuse his discretion in consolidating the two cases and trying them together and that no error was committed by so doing.

■ Appellants complain in their brief about the trial court detaining the children without bond during this appeal. Section 21 of the Act gives the trial court that authority if he thinks proper. Said Section 21 of the Act also authorizes a recognizance bond. The record does not disclose that appellants ever asked for bond for said children or that bond was ever denied them.

■ Throughout the Act in question there is obvious purpose and clear intention to change the whole policy of the State with respect to the nature of the proceedings in child delinquencies. In caption, body and emergency clause this outstanding intention and paramount purpose is accentuated. Nothing could be plainer. The express solicitude for minors cannot be overlooked nor can it be disregarded without violating all the fundamental principles of statutory construction. Intention and purpose, if not identical, are together the paramount consideration in construing a statute. There is no ambiguity in the statute under consideration and therefore no room for construction due to ambiguity. It is clear that the commitment of a delinquent minor is not a conviction for crime or offense of any character whatever and none of the consequences of a criminal conviction attend the commitment contemplated. Under this law there is no such thing as a criminal proceeding against a delinquent child as defined by the statute. The basic conception of this delinquency Act is not one of punishment but rather one of custodial protection of the child for his own good and incidentally for the protection of society. Whether the statute be wise or not, it is the policy chosen by the policymaking branch of the government and the courts respect that branch of government and its discretionary powers.

■ The legislative intent disclosed by an Act is the law, provided it is not contrary to the Constitution. There is no law of a state other than as declared by the Constitution or some legislative act. Judicial decisions do not make law—they merely interpret or pronounce law as the same exists.

■ It is our opinion that Senate Bill No. 44, Chapter No. 204 of the 48th Legislature, Regular Session, is sound and is not in violation of the Constitution or Bill of Rights. However, because of the errors pointed out, the judgment of the trial court is reversed and the case is remanded and Billy Dendy and L. J. King, Jr., are remanded to the jurisdiction of the trial court for his further supervision as a juvenile court, as provided by said Act.

Judgment reversed and cause remanded.

### On Motion for Rehearing.

Appellants and appellee filed motions for rehearing. Since appellants raised nothing new in their motion and since we have heretofore passed on all questions raised by them, their motion for a rehearing is overruled.

The County Attorney filed a motion for appellee asking for a rehearing and charging that this Court erred in holding that the trial court committed error in requiring appellants, Billy Dendy and L. J. King, Jr., to testify against themselves over their objections made only through their counsel. Appellee contends that "such privilege of refusing to testify, wherein such testimony might tend to incriminate the witnesses, must be claimed by the witness himself at the time such question is propounded to him, the answers to which might incriminate the witness, under oath, and cannot be claimed by such witnesses' counsel as was done in this case."

The record discloses that the above-named appellants were each fifteen years of age and must have been unaccustomed to court procedure and must have known little about the law governing the rights of the accused and his privileges when called as a witness. Appellants were standing trial as juvenile delinquents upon a petition charging them with fraud and making other accusations of a similar nature against them that amounted to a charge of theft. Such a proceeding should not be a criminal proceeding that contemplates punishment of the child if convicted, but it should be a proceeding for custodial protection of the child as intended by the Act in question.

Under authorities cited in the original opinion in this appeal, the word "incriminate" may mean even more than to charge with a crime; it may also mean to charge "with fraud, to accuse, or to involve in an accusation." These children of a tender age were charged with fraud, were being accused, and were then on trial as a result of such charges and accusations when the trial court, at the request of the State's counsel and over the objection of their own counsel, required them to be sworn and to give evidence against themselves that amounted to involuntary pleas of guilty and resulted in their convictions. They were the first witnesses called by the State; others were called later whose testimony corroborated that given by said appellants.

In any kind of a judicial hearing that involves the rights or the future destiny of a child, an old rule of law, as well as the Act in question, makes it the duty of the trial judge to zealously guard the rights of such child and to see that no advantage is taken of him in such proceedings. It is our opinion that the Act in question contemplates the conducting of a hearing in a juvenile case for the best interests of the child involved and there must be some rule of procedure, especially in a contested case, that will divulge, in so far as possible, the facts and conditions surrounding the child, but some regard must be had for the fundamental principles of judicial procedure. Certainly, a child of tender age who is standing trial upon a charge of fraud and other kindred accusations should have at least as much, if not more, protection at the hands of the trial court than an adult who is standing trial on a criminal charge.

The Act in question sets up a complete jurisdiction and procedure for hearing such cases and nowhere does it provide that either criminal or civil procedure shall be followed. It is our opinion that it contemplates a cooperative attempt upon the part of all the officers of the court in seeing that the best interest of the child is protected in such cases and that he is given every possible advantage for proper training for good citizenship.

We believe the objections of appellants' counsel alone to the trial court's compelling Billy Dendy and L. J. King, Jr., who were then on trial, to give testimony against themselves was sufficient in such a case without said children claiming their privilege of refusing to testify. We believe the trial court committed error in compelling them to testify over the objections of their counsel only, and we further believe that because of the tender ages of these appellants it was the duty of the trial court to inform them as witnesses, even after they were sworn as such, in language understood by them that they were not required to answer the questions propounded to them by the County Attorney. 44 Tex.Jur. 973, par. 29, and cases there cited.

All other questions raised by appellee have been heretofore disposed of, and appellee's motion for a rehearing is therefore overruled.